BARTON v. THE CONTINENTAL OIL COMPANY.

1. SHERIFF'S LIABILITY.

By statutory provisions a sheriff is made primarily liable to any person who may be damaged by the improper official acts of his undersheriff.

2. SAME.

In legal contemplation the acts of the undersheriff are the acts of the sheriff, for which he and his bondsmen are liable, while he has his remedy over against the undersheriff and his bondsmen.

3. ATTACHMENT OF REAL ESTATE—FORTHCOMING BOND.

The taking of a forthcoming bond for attached real estate is a proceeding without warrant of law. By the attachment the officer acquires neither possession of nor special property in real estate. Consequently he cannot voluntarily release it when it is once attached.

4. SAME.

The act of an undersheriff in entering satisfaction and releasing an attachment of real estate is unofficial and void.

5. SHERIFF'S LIABILITY.

A sheriff is not responsible for the unofficial or extra-official acts of his deputy.

6. ESTOPPEL.

A sheriff is not, by the extra-official and unwarranted acts of his undersheriff in entering satisfaction and release of attachment of real estate, estopped to deny the receipt of the money.

7. CONTEMPT.

If the sheriff or undersheriff retain money received officially, the sheriff, as an officer of court, may be held liable to a proceeding for

contempt, but such summary proceedings for the collection of a debt should be discouraged.

*Error to the District Court of Arapahoe County.*

PLAINTIFF in error was sheriff of Arapahoe county. J. P. Adams was undersheriff. On the 28th day of August, 1890, defendant in error brought suit against one Twining. On the 27th day of August an attachment was sued out in aid of the action, which on the same day was levied upon Twining's real estate. On April 3, 1893, trial having been had to a jury, judgment was rendered against Twining for $1,811 of debt and $189.07 costs. An appeal was prayed and allowed, but no bond as required was filed, and no appeal perfected. In due time a special execution was sued out to subject the real estate attached to the payment of the debt. Upon examination it was then found that the attachment levy had been recorded, as required by law, in the office of the county recorder, and that on the 24th day of September, 1890, the following entry had been made upon the margin of the page on which the levy of attachment had been recorded:

" Sept. 24th, 1890.

" In consideration of the full and entire satisfaction of the within levy, I hereby release and cancel the same from the record.

" [Signed]        E. R. BARTON, Sheriff.
" By J. P. ADAMS, Undersheriff."

It was also shown by the record that, on September 26th, Twining, the attachment debtor, had conveyed the property attached to one R. F. Hayes for a consideration of $5,750. It also, appears that, previous to the attempted release of the attached property upon the records, Adams, the undersheriff, had taken from Twining a forthcoming bond for the real estate attached. These facts appear of record, with the admission by the record of plaintiff in error by his undersheriff that he had received full satisfaction of the claim. This proceeding was

instituted by petition in the district court setting up the facts as above stated, and asking an order against plaintiff in error, which by the court was made on the 25th day of May, 1893, as follows:

"Upon reading the petition of The Continental Oil Company against Elias R. Barton in the above entitled cause, it is ordered that said Elias R. Barton show cause, if any he can, why he should not pay into this court the sum of $1,811.06 debt, with interest thereon at the rate of eight per cent per annum from the 3d day of April, 1893, together with the further sum of $189.07, costs, as prayed for in said petition, within five days from the date of the service of a copy hereof upon him, together with a copy of the said petition, and, in default of making such payment, to show cause why he should not be confined in the county jail of Arapahoe county until such amounts, and the interest thereon, and the costs of this proceeding are fully paid."

The respondent filed a very lengthy and elaborate answer. A synopsis of certain portions of it will be sufficient for the purposes of this decision. After admitting many of the allegations in the petition, he denied that on the 24th day of September, 1890, or at any other time, he received the full amount or any part of the claim of the Oil Company against Twining. Denied that he at any time did receive any part of the claim, through any person whomsoever, in satisfaction and discharge of the attachment, or to be applied upon the claim. Admits the attachment, the levy upon the real estate, and record of the levy in the record of the county recorder. Denied that he ever executed any release of the attached property. He neither denied nor admitted the entry made in discharge of the attachment, by Adams, upon the books of the county recorder, except that it is admitted inferentially when he denied that he had any notice or knowledge that any such entry had ever been made until just prior to the commencement of this proceeding. A demurrer was filed to the answer, and sustained by the court, and the following order made:

" And said rule heretofore entered as aforesaid be and the same is now made absolute, and that the said respondent, Elias R. Barton, be and is hereby ordered, adjudged and required to pay into this court for the use of the petitioner, The Continental Oil Company, the sum of $1,811.06, the amount of said judgment aforesaid, and the further sum of $189.07, costs, together with interest thereon from the said 3d day of April, 1893, at the rate of eight per cent per annum; and that, in case of default in the making of such payment, the said respondent, Elias R. Barton, be and he is hereby ordered to be confined in the jail of Arapahoe county until said amounts, and the interest thereon, as aforesaid, are paid into this court for the use of the petitioner as aforesaid. It is further ordered that said respondent, Elias R. Barton, have ten days from this date within which to make such payments into this court as aforesaid, and, further, that he pay the costs of this proceeding,"—from which this appeal was taken.

Messrs. SULLIVAN & MAY, for plaintiff in error.

Mr. V. D. MARKHAM, for defendant in error.

REED, J., delivered the opinion of the court.

The law in regard to an undersheriff is the following: " The sheriff of each county shall, as soon as may be after entering upon the duties of his office, appoint some proper person undersheriff of said county, who shall also be a general deputy, to hold during the pleasure of the sheriff." " Whenever a vacancy occurs in the office of sheriff of any county, the undersheriff of such county shall in all things execute the office of sheriff until a sheriff shall be appointed or elected and qualified; and any default or misfeasance in office of such undersheriff in the meantime, as well as before such vacancy, shall be deemed to be a breach of the condition of the bond given by the sheriff who appointed him, and also a breach of the bond executed by such undersheriff to the

sheriff by whom he was appointed." "Each sheriff may appoint such and so many deputies as he may think proper, for whose official acts, and those of his undersheriff he shall be responsible, and may revoke such appointments at his pleasure." Gen. Stats., secs. 595–597.

It will be seen by the above statutory provisions that the sheriff is primarily liable to any person who may be damaged by the improper official acts of his undersheriff; that, in legal contemplation, all the acts of the undersheriff are the acts of the principal, for which he and his bondsmen are liable, while he has his remedy over against the undersheriff and his bondsmen. This being the law, the acts and doings of Adams as undersheriff could only be regarded by the defendant in error as those of the sheriff, in so far as they were the official acts of the office.

The taking of a forthcoming bond for attached real estate was a novel proceeding, without warrant of law or common sense. The taking of the bond and attempted entry of satisfaction and release of the attached property upon the county records show either such gross ignorance of the duties of his office as should have disqualified him, or a studied attempt to perpetrate a fraud upon the defendant,—which, it is unnecessary to determine. It is clear that if the defendant was damaged and defrauded of its claim by the acts of Twining and the sheriff, it had a civil remedy by proceeding against the sheriff and his bondsmen. The proceeding in this case is for a contempt of court, criminal or *quasi* criminal, in its character, as shown by the judgment and order of court committing the defendant, upon failure to pay the amount of the judgment. As such it should have been instituted by and in the name of the people. The failure to do so and the prosecution on behalf of the appellee is erroneous, and would warrant a dismissal of the writ of error; but we prefer to decide it upon the merits of the case as presented. The entry of the sheriff upon the margin of the record, acknowledging satisfaction and releasing the attachment, was regarded by the court as estopping the sheriff from denying

the receipt of the money. Had there been judgment, and a special execution issued returned satisfied by the sheriff, a very different question would have been presented, the sheriff estopped, and the course pursued by the court warranted. The act of the undersheriff, Adams, in attempting to release the attachment, was extra-official and void. The entry in no way affected the Oil Company. I can find no statutory authority for a sheriff to release the record of attachment or enter satisfaction. It must come, if at all, either from the attaching plaintiff or the order of the court. The Civil Code (section 104) provides that real estate "shall be attached by filing a copy of the writ, together with a description of the property attached with the recorder of the county." The sheriff's duties are terminated when those acts are performed and he can exercise no further agency or control. "The lien created by the attachment, whatever may be its character, is in the attaching creditor, and he only can release or discharge it." Drake, Att. (4th ed.) sec. 240. In Wade, Att. (section 260) : " By the attachment the officer acquires neither possession of, nor special property in, real estate. Consequently, he cannot voluntarily release it when it is once attached, as he may do in case of personalty. The plaintiff alone can release the attachment on lands." " By the act of attaching, no estate passes to the plaintiff or to the attaching officer." 1 Drake, Att., sec. 239 ; *Lyon v. Sanford,* 5 Conn. 544; *Scott v. Manchester Print Works,* 44 N. H. 507. A case very nearly parallel in some particulars was *Braley v. French,* 28 Vt. 546. By a statute of that state the officer attaching real estate was required to leave a copy of the writ, and his return, with the town clerk, who was required to enter it in a book kept for the purpose. The officer made the levy, filed the papers, etc., but before record withdrew them, erased the levy made upon the real estate, and made a return of a levy upon personal property, to allow another attaching creditor to take title to the real estate free from the lien of his levy. The first attachment and debt were not satisfied ; the other creditor took title of the real estate

through a judicial sale.   The first attaching creditor brought ejectment and maintained his suit, the court holding : " We think, therefore, that the lien of the plaintiff on this real estate was not lost by that act of the officer, and that the defendant, in taking a conveyance of these premises, took the same subject to the lien of the plaintiff under that attachment." See also *Blossom v. Estes*, 84 N. Y. 614.  It is clear from the authorities that the act of the undersheriff in releasing the attachment was unofficial and void ; that the Oil Company was not and could not be prejudiced by it ; that the purchaser, Hayes, took the property subject to its attachment lien, and that it was not warranted in abandoning such a lien, and attempting to hold the sheriff personally responsible ; that the sheriff is not responsible for the unofficial or extra-official acts of his deputy.   See Meachem Pub. Off., sec. 797 ; Murfree on Sheriffs, sec. 77 ; *State v. Moore*, 19 Mo. 369 ; *Dorr v. Mickley*, 16 Minn. 20 (Gil. 8).   Consequently, the sheriff was not estopped by the entry of satisfaction by the undersheriff upon the margin of the record. If the fact of the receipt of the money by either officer had been established, and the money retained, the sheriff, as an officer of the court, would have been liable to the proceeding for contempt.   The answer of the respondent denied the receipt of any money whatever, and that issue of fact should have been tried, and the sheriff found to have received and retained it, before he could be found guilty of contumacy or contempt.   Until such facts were established, the court was without jurisdiction to order and enforce a judgment for contempt.   Such summary and unwarranted proceedings for the collection of a debt should be discouraged.   If the plaintiff had suffered loss by the acts of the sheriff or undersheriff, a civil action against the sheriff upon his official bond would have secured indemnity.   The court erred in sustaining the demurrer to respondent's answer.   The judgment will be reversed, and cause remanded.

*Reversed.*